210 N.J. Super. 397 (1986)
510 A.2d 56
JOHN B. BERNICK, PLAINTIFF-RESPONDENT,
v.
JACK N. FROST, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1985.
Decided May 13, 1986.
*398 Before Judges KING, O'BRIEN and SIMPSON.
Jack N. Frost, argued the cause pro se (Michael H. Kessler, of counsel).
John M. Baron argued the cause for respondent.
The opinion of the court was delivered by KING, P.J.A.D.
This case presents a choice-of-law question in the context of contingent attorneys' fees in a personal injury action. The question is whether New York or New Jersey law controls the amount of the attorney's fee. The Law Division judge applied the law of the forum, New Jersey. Appellant Jack N. Frost, who was the personal injury claimant's attorney and who effected a settlement of $260,000 for the plaintiff, claims that *399 New York law should apply. We conclude that this State had a sufficient governmental interest in the transaction to apply its own law in the circumstance.
This is what happened. On June 10, 1962, when plaintiff was four years old, he was admitted to St. Joseph's Intercommunity Hospital in Buffalo, New York. He was given a penicillin injection "which impaired [his] ability to walk" and created a problem with his leg which required several operations.
Defendant has been a member of the New Jersey bar since 1971; he is not admitted to the New York bar. On August 15, 1977 plaintiff, a New Jersey resident, and defendant signed a contingency fee agreement in contemplation of a claim to be made against the Buffalo hospital, the doctor who ordered the injection, and the nurse who gave it. This form agreement provided that "the attorney shall be paid a fee, contingent in whole or in part, to be computed as follows: one-third of any amount recovered after the payment of all fees except as limited by Rule 1:21-7c." (See Appendix A). Defendant then told plaintiff that if the case was settled before a lawsuit was filed or if suit was filed in New Jersey, the New Jersey contingency fee rule would apply. Defendant indicated that he would determine whether the suit could be filed in New Jersey or had to be filed in New York.
In 1977 New Jersey Court Rule 1:21-7(c) provided
In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, including products liability claims, and the client is not a subrogee, an attorney shall not contract for, charge, or collect a contingent fee in excess of the following limits:
(1) 50% on the first $1000 recovered;
(2) 40% on the next $2000 recovered;
(3) 33 1/3% on the next $47,000 recovered;
(4) 25% on the next $50,000 recovered;
(5) 20% on the next $150,000 recovered;
(6) 10% on any amount recovered over $250,000; and
(7) where the amount recovered is for the benefit of an infant or incompetent and the matter is settled without trial the foregoing limits shall apply, except that the fee on any amount recovered up to $50,000 shall not exceed 25%.
*400 R. 1:21-7(d) also stated that the fee to be calculated would be computed on the net recovery after the attorney was paid for expenses incurred "in connection with the institution and prosecution of the claim."
At the time of the filing of this lawsuit, New York's contingent fee statute, N.Y.Jud.Law § 474-a (McKinney 1983), provided that
2. Notwithstanding any inconsistent judicial rule, a contingent fee in a medical malpractice action shall not exceed the amount of compensation provided for in either of the following schedules:
SCHEDULE A
50 percent of the first $1,000 of the sum recovered;
40 percent of the next $2,000 of the sum recovered;
30 percent of the next $22,000 of the sum recovered; 25 percent of any amount over $25,000 of the sum recovered; or
SCHEDULE B
A percentage not exceeding thirty-three and one-third percent of the sum recovered, if the initial contractual arrangement between the client and the attorney so provides, in which event the procedure hereinafter provided for making application for additional compensation because of extraordinary circumstances shall not apply.
Section 474-a also provided that the contingency fee would be calculated on the net recovery after deducting expenses "properly chargeable to the enforcement of the claim or prosecutor of the action."
According to plaintiff, defendant then contacted him and said that suit had to be filed in New York. Defendant explained that the New York contingent-fee statute would apply, not the New Jersey contingent-fee rule. Defendant properly decided that the malpractice suit had to be filed in New York to obtain in personam jurisdiction over the defendants, who were not amenable to service in New Jersey. According to defendant, plaintiff then agreed that "since New York's fee was one-third and the contingent fee agreement signed by him was for one-third, there was no need to sign a separate contingent fee *401 agreement." Plaintiff states he simply was told that the "New York contingency fee rule would apply."
Defendant then hired David M. Wexler, a New York attorney, because it was necessary to file suit in New York and because the local rules of the United States District Court required the designation of a local attorney upon whom service of process could be made. Defendant did not consult plaintiff before hiring Wexler; plaintiff and Wexler had no direct fee agreement or relationship. Wexler and defendant agreed that Wexler would receive compensation at a rate of $75 to $125 an hour depending on the nature of the work performed.
Defendant later was admitted pro hac vice to the New York federal district court where suit was filed. Defendant drew up the complaint and Wexler filed it in October 1978. The suit was filed against the hospital, the doctor and the nurse who had treated plaintiff. Defendant prepared and answered interrogatories, drafted motions and ultimately negotiated the total settlement of $260,000. Everyone agrees that defendant did an excellent job for his client, especially since the injury occurred 16 years before the defendant was consulted.
Plaintiff was issued a check for $162,049 as his net recovery from the hospital which settled for $255,000. Plaintiff's parents received a check for $3,070 for their derivative claim. Defendant received a total of $89,881. Of this sum $4,881 represented reimbursement for expenses and $85,000 represented defendant's fee, out of which defendant paid Wexler $5,000. Defendant said Wexler only worked ten hours on the case but he paid him a bonus because of his valuable advice during settlement negotiations. Wexler was paid entirely out of defendant's fee. The physician involved in the case settled for $5,000. Out of this sum plaintiff received $3,333.33; defendant received $1,666.67.
After the settlement proceeds had been disbursed, plaintiff went to the defendant and questioned whether the one-third on which defendant's fee was calculated should be one-third of the *402 net or one-third of the gross recovery plus expenses. This disagreement was adjusted when defendant agreed to give plaintiff a $1,000 credit for future legal services. During this discussion, defendant told plaintiff he believed that the New Jersey contingency fee rule did not apply, but advised him to consult another lawyer on this point. If plaintiff had questioned defendant's fee at this time, defendant claimed he would have asked the federal judge in Buffalo for approval of the proper fee.
In his decision on the cross-motions for summary judgment in this suit brought for the fee differential, Judge Bradshaw stated
The major dispute between the parties in this suit is whether New York or New Jersey contingent fee rules apply. This Court holds that the New Jersey contingent fee schedule as set forth in R. 1:21-7(c) at the time of the litigation controls. Under the Constitution of New Jersey, the New Jersey Supreme Court has jurisdiction over the admission to the practice of law. (Art. VI, § II, par. 3). This includes the power to adopt R. 1:21-7 regulating contingent fees in tort litigation.
As factual support for his conclusion, he stressed that plaintiff was a New Jersey resident, that defendant was a New Jersey attorney, and that defendant handled the case to the extent that he could from New Jersey. The difference between the New Jersey and New York fee schedule was $26,138.01. This amount was the amount of the judgment entered for the plaintiff. Defendant's application for a higher fee than the schedule permits, see R. 1:21-7(f), was denied.
By whatever analysis is adopted, we think the judge properly applied New Jersey law. Both parties were New Jersey residents. The fee agreement was executed in this State in a form contemplating application of the New Jersey maximum fee schedule which had been set by our Supreme Court. Apparently, the possible applicability of the New York fee statute did not arise until defendant decided that he had to sue in New York in order to press the case forward. The attorney-client relationship throughout the case subsisted in *403 New Jersey. Doubtless, most of defendant's performance was rendered in this State.[1]
Since at least Caribe Hilton Hotel v. Toland, 63 N.J. 301, 303 (1973), a suit here on a gambling debt incurred in Puerto Rico, our courts in contract cases have attempted to apply the law of the jurisdiction "having the most significant relationship to the parties and to the transaction." Indeed, it can be effectively contended that the parties themselves selected New Jersey law to govern their economic relationship when they signed the agreement here, incorporating our law by reference. See Restatement, Conflict of Laws 2d, § 187 at 561 (1971) (law of state chosen by the parties controls); Cf. N.J.S.A. 12A:1-105(1) (under UCC parties may agree to applicable law).
But we think § 188 at 575 of the Restatement 2d points unequivocally to the application of New Jersey law in the circumstances if the choice of the parties is considered unclear or uncertain. Section 188 states
(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

*404 (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6[2] to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.
Section 188 represents not only the expressed view of our Supreme Court but also the view of those who are considered enlightened and progressive thinkers in the field of conflicts of law. See Hill, "The Judicial Function in Choice of Law," 85 Col.L.Rev. 1585, 1634-1635 (1985); R. Leflar, American Conflicts Law, § 149 at 306 (1977). And there seems little reluctance in the debatable case for the forum to apply its own law where it has sufficient contacts to justify use of local law. Id., § 150 at 309-311; see Choate, Hall & Stewart, 378 Mass. 535, 392 N.E.2d 1045 (1979) (in suit for attorneys' fees, law of forum applied).
In addition to the usual choice-of-law considerations we cannot overlook the strong public interest of our State, as expressed *405 by Supreme Court rule, in regulating the economic relationship between New Jersey attorneys and their clients in tort cases. Amer. Trial Lawyers Assoc. v. N.J. Supreme Ct., 126 N.J. Super. 577 (App.Div.), aff'd 66 N.J. 258 (1974); Kingman v. Finnerty, 198 N.J. Super. 14 (App.Div. 1984). Moreover, when the contingent fee rule was promulgated, the Director of the Administrative Office of the Courts issued a notice to the bar which emphasized this policy of our Supreme Court. The notice provided that
In response to questions with regard to R. 1:21-7(c), Contingent Fees, and R. 4:42-1(b), Interest on Judgments, the Supreme Court has authorized the following responses:
1. Do the limits set forth in R. 1:21-7(c) apply to cases in federal courts? Yes. The Supreme Court considers that they apply to any contingent fee arrangement in a tort matter entered into by a New Jersey attorney, without regard to the court in which an action may subsequently be filed, and to any participation by a New Jersey attorney in a contingent fee arrangement entered into outside the State of New Jersey with respect to litigation in this State. This is not intended to deny the authority of the Federal Courts to apply a different standard to implement some other federal policy. [Notice to the Bar, 95 N.J.L.J. 341 (1972) Emphasis added].
An example of an interesting contrast is found in State Farm, etc., Inc. Co. v. Simmons' Estate, 84 N.J. 28 (1980). This case involved a State Farm automobile liability policy issued in Alabama to an Alabama resident. Five occupants of the car were killed in an accident in New Jersey resulting in claims asserted against the State Farm policy which had been issued in Alabama. The only significant New Jersey contact was the occurrence of the accident here. Our Supreme Court there deferred to Alabama law under the "dominant and significant relationship analysis." Id. at 37; see also HIMC Investment Co. v. Siciliano, 103 N.J. Super. 27 (Law Div. 1968).
Finally, we do not think that defendant should be deprived of his opportunity to apply to the assignment judge for an increased fee under R. 1:21-7(f). He has never done so, although he did apply to the judge who heard the cross-motions for summary judgment. The motion under subsection (f) must be made to the assignment judge. In view of the unusual circumstances *406 of this case, i.e., plaintiff did not sue for reimbursement for almost three years after disbursement, and defendant rendered excellent service, our affirmance is without prejudice to defendant to apply to the assignment judge within 30 days for an increased fee under R. 1:21-7(f); see McNelis v. Cohen, 188 N.J. Super. 87 (Law Div. 1982).
The judgment in favor of plaintiff for $26,138.01, representing the difference between the New York fee and the New Jersey fee in 1977, is affirmed.

APPENDIX A
 1. Name of Attorney JACK N. FROST
 Address of Attorney 700 Park Avenue
 Plainfield, New Jersey 07060
 2. Name of Client John Bernick
 Address of Client 403 Lincoln Avenue
 Dunellen, New Jersey
 3. John Bernick hereby agrees to retain
 Jack N. Frost as his attorney
represent him with respect to all claims against St. Joseph's Children's Hospital or any other person (including a corporation or governmental body) arising out of an incident occurring on or about 19, by which John Bernick did sustain personal injuries and/or property damages.
4. Although the client has been advised of his right to retain the attorney under an arrangement whereby he would compensate the attorney on the basis of the reasonable value of his services, the client and the attorney agree that the attorney shall paid a fee, contingent in whole or in part, to be computed as follows:
One-third of any amount recovered after the payment of all fees except as limited by Rule 1:21-7c
In the event there is no recovery, except as may otherwise be specified above, the client shall not be obligated to pay the attorney a fee for his services, but the client shall reimburse the attorney for all disbursements made by the attorney in connection with the institution and prosecution of the claim.
5. The above contingent fee shall be computed on the net recovery *407 arrived at by deducting from the gross recovery all disbursements in connection with the institution and prosecution of the claim, including investigation expenses, expenses for expert or other testimony or evidence, the cost of briefs and transcripts on appeal, and any interest included in a judgment pursuant to R. 4:42-11(b).
The fee shall include legal services rendered on any appeal, review proceeding or retrial, but this shall not be deemed to require the attorney to take an appeal.
6. The attorney reserves the right, pursuant to R. 1:21-7(f) to make further application to the Assignment Judge on written notice to the client for an additional fee should the attorney, at the conclusion of the matter, deem the fee provided for by this arrangement to be inadequate.
 /s/ John Bernick 
 (Signature of Client)
 John Bernick
 Jack N. Frost
 Date August 15 1977
NOTES
[1] In his affidavit defendant states

3. The plaintiff hired me to pursue his action in New York. I drafted and filed the complaint in my law firm's name. I drafted and filed the interrogtories in my law firm's name. I answered the interrogtories served on the plaintiff by the hospital and doctor. I negotiated the settlement in the case and drew up the motions that were to be filed. I would have tried the case, taken depositions and done all other trial preparations in the case if the case had not been settled. It was my office which obtained all the hospital records, doctor's reports, treating physician reports, expert reports on liability, etc.
4. The only reason that there was New York counsel was to satisfy the local rules of the U.S. District Court for the Western District of New York that a local attorney be designated upon whom all notices, orders and pleadings may be served (see, for example, Rule 5 of the local rules for the U.S. District Court for New Jersey). At the conclusion of the case, Mr. Wexler had done less than 10 hours worth of work, so I paid him a bonus of approximately $4,000 over and above the legal fee he was entitled to because of his advice received during settlement negotiations.
[2] Section 6 states

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.