**Bruce NEWCOMB and Ann
Newcomb, Plaintiffs,**

v.

**DANIELS, SALTZ, MONGELUZZI &
BARRETT, LTD., Defendant.**

**Civ. A. No. 93–1757.**

United States District Court,
D. New Jersey.

April 4, 1994.

Eugene P. Chell, Chell & Chell, Woodbury, NJ, for plaintiffs.

Arthur E. Ballen, Ballen & Gertel, P.C., Camden, NJ, for defendant.

## OPINION

GERRY, Chief Judge.

This case concerns a dispute over attorney's fees charged by the defendant for legal services rendered to the plaintiffs in connection with a personal injury suit. The defendant seeks a change of venue. The plaintiffs oppose the change of venue and seek summary judgment on their claims.

## I. *BACKGROUND*

The defendant is the law firm of Daniels, Saltz, Mongeluzzi & Barrett. The firm represented the plaintiffs, Ann and Bruce Newcomb, in their lawsuit arising from Mr. Newcomb's December 1, 1989 industrial accident in Trenton, New Jersey. (Affidavit of Bruce Newcomb.) Contact between the parties began in December of 1989 when Robert J. Mongeluzzi, a member of the firm and the New Jersey and Pennsylvania bars, called the plaintiffs at their home in New Jersey to discuss possible representation. (Affidavit of Ann Newcomb at 2.) (Affidavit of Robert J. Mongeluzzi at 2.) Shortly thereafter, Mr. Mongeluzzi visited the Newcombs at their home to discuss the matter, but the parties did not reach any agreement regarding representation at that time. *Id.* For approximately the next 20 months, Mr. Newcomb received New Jersey Workers' Compensation

benefits and did not pursue a separate law suit. (Affidavit of Ann Newcomb.)

On October 24, 1991, Mr. Mongeluzzi visited the plaintiffs at home again, and this time the parties signed a contingent fee agreement and the representation commenced. (Affidavit of Ann Newcomb at 3.) (Affidavit of Robert J. Mongeluzzi at 3.) (Contingent Fee Agreement.) The agreement provides that the firm would receive 40% of any recovery, plus costs. (Contingent Fee Agreement, Defendant's Summary Judgment Exh. A.) The plaintiffs did not visit the defendant's Philadelphia offices at any time prior to signing the fee agreement. (Affidavit of Ann Newcomb at 3.) They allege that no member of the firm ever discussed with them the issue of where their case should be filed or the differences between New Jersey and Pennsylvania law on attorney contingent fees. (Affidavit of Ann Newcomb at 3.) The firm asserts that Mr. Mongeluzzi discussed both issues with the plaintiffs before the agreement was signed. (Affidavit of Robert J. Mongeluzzi at 4.)

The firm filed suit on the plaintiffs' behalf in October 1991 in District Court for the Eastern District of Pennsylvania. (See Complaint; Def. Exh. C to Brief in Opposition to Summary Judgment.) Three of the five defendants were Pennsylvania residents. Almost all the numerous depositions taken in the action were taken in Pennsylvania. (Affidavit of Robert J. Mongeluzzi at 8.)

The personal injury case settled in November 1992 for a total of $1,000,000. When the firm advised the plaintiffs of the amount of the settlement that was attributable to attorney's fees, the plaintiffs refused to permit the payment of the fees and fired the firm. The plaintiffs secured other representation and filed suit in New Jersey Superior Court, claiming that the fee agreement was invalid under New Jersey law. The defendant secured removal of that action to this court on the basis of diversity. After the plaintiffs' attorney's fee suit was filed, but before it was removed, the defendant filed a petition for attorney's fees with the court presiding over the personal injury action in the Eastern District of Pennsylvania. That court refused

to hear the matter. (Affidavit of Eugene P. Chell.)

Presently before the court are two motions. First, the defendant moves for a change of venue from the District of New Jersey to the Eastern District of Pennsylvania. Second, the plaintiffs move for summary judgment on their claims.

## II. *ANALYSIS*

### A. *Venue*

■ Section 1404(a) of Title 28 of the United States Code provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In applying this provision, courts assign the plaintiff's choice of forum significant weight unless the case has little connection with the chosen forum. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); *American Tel. & Tel. Co. v. MCI Communications*, 736 F.Supp. 1294, 1306 (D.N.J.1990). It is thus the defendant's burden to show that transfer would serve the interests enumerated in the statute.

The defendant in the present case seeks a transfer from the District of New Jersey to the Eastern District of Pennsylvania. The defendant argues that such a transfer would be appropriate under § 1404(a) because the Pennsylvania forum would be more convenient, and because Pennsylvania law would govern the rights under the contract. For the reasons set forth below, we find that defendant has failed to demonstrate that a transfer would be appropriate.

■ In general, the convenience of the witnesses weighs in favor of transfer under § 1404(a), when the chosen forum would make some witnesses unavailable to testify. *E.g., Bartolacci v. Corporation of Presiding Bishop*, 476 F.Supp. 381, 383 (E.D.Pa.1979). The interests of the parties weigh in favor of transfer under § 1404(a) usually only when one of the parties can exhibit a lack of ability to attend the proceedings in the chosen forum. *E.g., Kimball v. Schwartz*, 580 F.Supp.

582, 588 (W.D.Pa.1984). In this case, these two interests are closely related because the major witnesses in the case will be the parties themselves.

■ Here, the defendant has failed to allege that the assignment of this case to the New Jersey venue would disserve either the convenience of the parties or the convenience of the witnesses. Further, the defendant has not shown that the Pennsylvania forum would better serve either of these interests. The plaintiffs live in New Jersey. The defendant is a law firm located in Philadelphia, a very short distance from the Camden venue, and affiliated with another law firm located in New Jersey. Thus, the defendant has not alleged that the assignment of the case to the New Jersey venue would make any of the parties, or even other incidental witnesses in this case, unable to attend trial. In fact, the defendant has not even established that the New Jersey forum would be significantly inconvenient for the parties or the witnesses. Therefore, the first two factors in the venue analysis, convenience of the parties and convenience of the witnesses, do not favor transfer.

The defendant firm has similarly failed to show that the interests of justice demand a transfer in this case. It does not allege that it will be unable to properly defend itself if the case is litigated in the District of New Jersey. It does not demonstrate any inherent unfairness in the plaintiffs' decision to pursue this matter in New Jersey.

To support their argument that a transfer is in order here, the defendant seems to simply assert that it would be more natural and more logical for the court that handled the underlying personal injury matter to address this attorney's fee dispute, both because the court there "witnessed" the performance of this contract and because Pennsylvania law applies. We cannot accept this argument. There is no reason why this court would be unable to apply Pennsylvania law competently, assuming that Pennsylvania law were to apply.[1] Further, the defendant has cited no case where a court has granted

a transfer of venue under such circumstances. Moreover, the court that presided over the underlying personal injury dispute refused to hear the attorney's fee dispute. Therefore, the plaintiffs' choice to file the case in New Jersey was not inappropriate and is in fact entitled to substantial weight.

In sum, having found no basis for transferring the case from this District to the Eastern District of Pennsylvania, we deny the defendant's motion for a change of venue.

### B. *Summary Judgment*

■ The plaintiffs argue that they are entitled to summary judgment holding the fee agreement void and unenforceable and reforming the contract to comply with New Jersey law. On a motion for summary judgment, the burden is on the moving party to show that no genuine issue of material fact exists. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir.1987); Fed.R.Civ.P. 56. In considering such a motion, the court views the record in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983); *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981). An issue is genuine when the evidence proffered by the non-moving party is such that a reasonable fact finder could find for that party. *Equimark*, 812 F.2d at 144.

### 1. *Choice of Law*

■ The issue of which state's law should apply is the major point of contention in this case. The defendant contends that Pennsylvania law, which would permit the 40% fee arrangement, applies. The plaintiffs contend that New Jersey law, which would limit the fee to a significantly lower percentage, applies. In a diversity action, the court's choice of law is governed by the law of the state where the court sits. *Klaxon Co. v. Stentor*

---

1. This issue is the major point of contention in this case, as discussed below. The plaintiffs claim that the contract would be governed by New Jersey law because New Jersey was the place where this contract was negotiated and formed.

*Electric Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir.1988). Thus, New Jersey choice of law rules apply in this case.

█ The defendant firm points out that New Jersey choice of law rules generally favor the enforcement of an express choice of law by the parties to a contract, and urges that such an express choice of law exists here. Although the defendant acknowledges that the contract at issue never explicitly mentions Pennsylvania law, the defendant argues that the 40% fee arrangement suggests that the parties intended Pennsylvania law to apply because such a provision would be valid only under Pennsylvania law.[2] The defendant further argues that Mr. Mongeluzzi's discussions with the Newcombs prior to the signing of the contract, wherein he advised the Newcombs of the differences between Pennsylvania and New Jersey contingent fee law further support the contention that the 40% provision expresses the parties' intention to have Pennsylvania law apply.

Based on the defendant's argument, we acknowledge that at least one genuine issue of fact relevant to the issue of whether the parties made an effective choice of law remains. However, for the reasons set forth below, we conclude that any fact relevant to this issue is immaterial to the resolution of the case, because even if we were to assume that the parties made an explicit choice of Pennsylvania law in this contract, this court could not enforce such a choice.

█ Under New Jersey law, if the parties to a contract agree that a particular state's law will govern their rights and duties under the contract, the courts will generally honor the agreement, unless:

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental

policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187; *see also Instructional Systems v. Computer Curriculum Corp.*, 130 N.J. 324, 341–42, 614 A.2d 124 (1992). The present facts present a situation calling for the application of § 187(b).

█ In order to override the choice of law of the parties to the contract under the considerations of § 187(b), a court must find: (1) that the application of Pennsylvania law would be contrary to a fundamental policy of New Jersey; (2) that New Jersey has a materially greater interest than Pennsylvania in the determination of the particular question at issue; and (3) that under the general choice of law considerations of § 188 of the Restatement (Second) of Conflict of Laws, New Jersey law would apply.

In *Winer Motors, Inc. v. Jaguar Rover Triumph, Inc.*, 208 N.J.Super. 666, 506 A.2d 817 (App.Div.1986), a New Jersey Appellate Division court found a situation that met all three of these criteria. There, the choice of law provision called for the application of the law of the franchisor's state, Connecticut. In refusing to enforce the provision, the court observed that New Jersey franchise laws, which were more favorable to the franchisee, were designed to protect franchisees from franchisors who tended to be more powerful contracting parties. The court reasoned that the application of Connecticut law to the contract would violate New Jersey policy by permitting franchisors to wipe away New Jersey's efforts at protection with a sweep of the pen. The court further reasoned that New Jersey's interest in the particular contract was greater than Connecticut's interest because the franchisee was located in New Jersey. It assumed that Connecticut would

---

**2.** In support of its argument that there need not be an explicit designation of a particular state in a contract for a court to conclude that an effective choice of law was made, the defendant cites Comment (a) to Restatement (Second) of Conflict

of Laws § 187 and *Gray v. Joseph J. Brunetti Constr. Co.*, 266 F.2d 809, 815 (3d Cir.1959), *cert. denied*, 361 U.S. 826, 80 S.Ct. 74, 4 L.Ed.2d 69 (1959).

apply its own law in cases where the franchisee was located in Connecticut. Therefore, the court refused to enforce the choice of law provision. After finding that New Jersey had a more significant relationship to the parties and the contract than Connecticut under the § 188 factors, the court applied New Jersey law. The New Jersey Supreme Court cited this approach with approval in *Instructional Systems v. Computer Curriculum Corp.*, 130 N.J. 324, 343, 614 A.2d 124 (1992).

■ The facts of the present situation compel reasoning similar to that employed in *Winer Motors.* First, we find that under the present circumstances, as under the circumstances in *Winer Motors,* the choice of another state's law would violate New Jersey public policy. New Jersey has a strong interest in regulating the economic relationship between New Jersey attorneys and their clients in tort cases. *American Trial Lawyers Ass'n v. New Jersey Supreme Court,* 126 N.J.Super. 577, 588, 316 A.2d 19, 24–25 (App. Div.1974), *aff'd,* 66 N.J. 258, 330 A.2d 350 (1974); *see also Kingman v. Finnerty,* 198 N.J.Super. 14, 486 A.2d 342 (App.Div.1984); *Bernick v. Frost,* 210 N.J.Super. 397, 510 A.2d 56 (App.Div.1986). Just as New Jersey's franchise laws are designed to protect franchisees, New Jersey's contingent fee rules are designed to protect clients negotiating fee arrangements from the greater knowledge and bargaining power of their attorneys. *American Trial Lawyers Ass'n,* 126 N.J.Super. at 588, 316 A.2d at 24–25. One New Jersey court has noted that when the contingent fee rule was promulgated, the Director of the Administrative Office of the Courts issued a notice to the bar emphasizing this policy:

> The Supreme Court considers that *[the limits set forth in R. 1:21–7(c) ] apply to any Contingent Fee arrangement in a tort matter entered into by a New Jersey attorney, without regard to the Court in which an action may subsequently be filed,* and to any participation by a New Jersey attorney in a Contingent Fee arrangement entered into outside the State of New Jersey with respect to litigation in this State. This is not intended to deny the authority of the Federal Courts to apply a different standard to implement some other Federal policy.

Notice to the Bar, 95 N.J.L.J. 341 (1972) (emphasis added), (quoted in *Bernick,* 210 N.J.Super. at 404, 510 A.2d at 60).

As indicated in this notice, the policy embodied in the fee limitation rule extends to the present facts. Here, a New Jersey attorney entered into a contingent fee arrangement in New Jersey in connection with a cause of action for which the attorney subsequently filed a claim in another state. In fact, the present facts provide even more support for the application of New Jersey public policy than the situation described in the notice: the subject of the underlying dispute was an accident that took place in New Jersey.

Judicial enforcement of a choice of law provision such as the one at issue here would permit attorneys to circumvent the strong public policy of the State of New Jersey in protecting its citizens. Like the enforcement of the choice of law provisions included in franchise contracts by franchisors discussed in *Winer Motors,* it would permit attorneys to wipe away the protective effects of the New Jersey contingent fee limitations "with the sweep of a pen."[3]

Applying the second prong of the § 187 analysis in light of the *Winer Motors* reasoning, we find that New Jersey has a greater interest in applying its law to the particular circumstances than does Pennsylvania. Although Pennsylvania has an interest equal to New Jersey's in protecting its citizens from the overreaching of attorneys in contingent fee cases, Pennsylvania's interest does not apply where the client involved is a New Jersey citizen injured in New Jersey who negotiated his contingent fee contract in New Jersey with a New Jersey-licensed attorney. Like the *Winer Motors* court, we assume that the other state with an interest here would apply its own law in converse circum-

---

**3.** In fact, if we were to find an explicit agreement regarding the choice of law in this case, we would permit the attorney to frustrate New Jersey policy with even less than the sweep of a pen: the contract at issue here did not even contain the words "Pennsylvania law."

stances: we assume that Pennsylvania would apply its own contingent fee law to a case where the Pennsylvania client who was injured in Pennsylvania negotiated his contingent fee contract in Pennsylvania with a Pennsylvania-licensed attorney. Thus, we conclude that New Jersey has a materially greater interest than Pennsylvania in the determination of the issues here.

The third § 187 consideration requires us to consider whether New Jersey has a more "significant relationship," as defined by § 188, to the contract or transaction than Pennsylvania does. *See, e.g., Winer Motors,* 208 N.J.Super. at 672–73, 506 A.2d at 820–21; *Instructional Systems,* 130 N.J. at 342–43, 614 A.2d at 133–34; *Bernick v. Frost,* 210 N.J.Super. 397, 403, 510 A.2d 56, 59 (App. Div.1986), *cert. denied,* 105 N.J. 511, 523 A.2d 158 (1986). Section 188 provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction under the principles stated in § 6.[4]

(2) the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiations of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract,

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied. . . .

We conclude that New Jersey law would apply under these factors.

In following § 188's directive that we evaluate the various contacts enumerated "according to their relative importance with respect to the particular issue," we find that some of the § 188 factors weigh more heavily than others in the context of this case. The goal of the contingent fee limitations in achieving client protection counsels in favor of assigning greater weight to the place of contract, the place of negotiation and the domicile of the clients, rather than the place of performance. The former factors focus on the clients' location and their reasonable expectations when entering into an attorney's fee agreement.

Given these considerations, we find that New Jersey holds a greater interest in having its state's law applied than does Pennsylvania. The clients to be protected here, the plaintiffs, lived in New Jersey. The negotiations took place in their New Jersey home. Furthermore, the attorney who contacted the plaintiffs, Mr. Mongeluzzi, is a member of the New Jersey bar. The only factor weighing in favor of the application of Pennsylvania law in this case is that the performance was to take place in Pennsylvania. This factor being less important in this particular consideration, and all the other more important factors weighing in favor of the application of New Jersey law, we conclude that New Jersey law would apply under the "most significant relationship" test of § 188.

In sum, following the reasoning in *Winer Motors,* we find that the contravention of the strong New Jersey public policy protecting clients in attorney contingent fee contracts

---

4. Section 6 of the Restatement provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

by the choice of Pennsylvania law under the circumstances demonstrated here should not and would not be countenanced by a court of this state. Further, we find that New Jersey holds a more significant interest in having its law applied in such circumstances. Finally, in applying general choice of law principles, we find that New Jersey has the more significant relationship to the contract in this case. We accordingly hold that we would refuse to enforce the agreement in this case if there was one, and that New Jersey law applies here.

### 2. *Application of the Law*

New Jersey Court Rule 1:21–7 provides:

(c) In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, including products liability claims, and the client is not a subrogee, an attorney shall not contract for, charge, or collect a contingent fee in excess of the following limits:

(1) 33⅓% on the first $250,000 recovered;

(2) 25% on the next $250,000 recovered;

(3) 20% on the next $500,000 recovered....

(d) The permissible fee provided for in paragraph c shall be computed on the net sum recovered after deducting disbursement in connection with the institution and prosecution of the claim, ...

The contingent fee at issue here clearly violates this rule. It calls for the clients to pay 40% of the recovery plus costs. As such, it must be held invalid and unenforceable and must be reformed to comply with Rule 1:21–7.

### III. *CONCLUSION*

For the foregoing reasons, we grant the plaintiffs' motion for summary judgment, and hold that the contract at issue is invalid and unenforceable under New Jersey Court Rule 1:21–7. We hold that the contract must be reformed to comply with New Jersey Court Rule 1:21–7. However, we reserve judgment on the issue of the appropriate reformation of the agreement because the parties have not adequately briefed that issue.

### ORDER

This matter having come before the court upon motion of the defendants for a change of venue and by the plaintiffs for summary judgment, and the court having considered the submissions and arguments of the parties, and for good cause shown;

It is, this 4th day of April, 1994, hereby ORDERED:

(1) that defendant's motion is DENIED;

(2) that partial summary judgment be and is hereby GRANTED in the plaintiffs' favor in that we hold the term of the contract at issue governing the amount the plaintiffs are obligated to pay the defendant is unenforceable under New Jersey law;

(3) that the contract be reformed to comply with New Jersey Court Rule 1:21–7; and

(4) that the parties submit briefs to the court within 21 days of the date of this order on the issue of how the contract should be reformed to comply with New Jersey Court Rule 1:21–7.