Lawrence **CHRISTY**, Plaintiff,

v.

**WE THE PEOPLE FORMS AND SERVICE CENTERS, USA, INC., and Ira T. Distenfield, Defendants.**

**Civil Action No. 01–5006(JEI).**

United States District Court,
D. New Jersey.

March 6, 2003.

Fisher & Zucker LLC, by: Jeffrey Zucker, Esquire, Cherry Hill, NJ, for Plaintiff.

Law Office of Ann M. McGuffin, by: Ann M. McGuffin, Esquire, Pine Beach, NJ, Burns, Figa & Will, P.C., by: Alexander R. Rothrock, Esquire, Englewood, CO, for Defendants.

## OPINION

IRENAS, Senior District Judge.

Presently before this Court is Defendants', We The People Forms and Service Centers, USA, Inc. ("We The People") and Ira T. Distenfield ("Distenfield"), Motion for Judgment on the Pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, as to Count I of Plaintiff's, Lawrence Christy ("Christy"), First Amended Complaint. For the reasons set forth below, we will grant Defendants' Motion for Judgment on the Pleadings.

## I.

Defendant, We The People, is a California based national franchisor of document preparation franchises. We The People provides its franchises with the license to use We The People's trademarks and business system in the operation of each franchisee's We The People paralegal document preparation service. Defendant, Distenfield, a former stockbroker and County Official in Los Angeles, California, is Chairman of We The People. Plaintiff, an auto-mechanic by trade, is a former franchisee of We The People franchises in Cherry Hill and Turnersville, New Jersey.

On September 21, 1999, after reading an article in a business magazine regarding We The People, Plaintiff flew to Santa Barbara, California, to meet Distenfield and tour three We The People offices in the Los Angeles area. (*See* Pl.'s Opp. Br. at 1). Plaintiff claims that Distenfield explained that he could expect to gross $60,000 a month as a We The People "legal document preparation" office. (*Id.*).

On September 22, 1999, Plaintiff executed a We The People Franchise Agreement pursuant to which he purchased a We The People franchise to be operated in Camden County, New Jersey for $89,500. Plaintiff also executed an Addendum to the Franchise Agreement pursuant to which he purchased the option to operate the remaining territory in Camden County, New Jersey for $10,500.[1] After Plaintiff executed the Franchise Agreement and paid We The People a total of $100,000, Distenfield provided Plaintiff with a We The People Uniform Circular ("UFOC"), which suggested an opportunity to become a "paralegal document" preparer.

On December 8, 1999, Plaintiff and We The People executed a Second Addendum to the Franchise Agreement, modifying the

---

1. Under the terms of the Addendum, Plaintiff had the right to purchase the remaining territory for $89,500 within twenty-four (24) months of the execution of the Addendum.

First Addendum.[2] The Second Addendum stated that the parties agreed that Plaintiff would exercise his option to purchase the second territory, pursuant to which Plaintiff was given credit for the $10,500 paid to We The People on September 22, 1999, and for a second payment of $20,000 made on December 6, 1999. The remaining balance of $29,000 was to be paid within twenty-four (24) months of the date of the Second Addendum.

In February 2000, Plaintiff began operating his first We The People franchise at the Washington Shopping Center in Turnersville, New Jersey. We The People provided Plaintiff with a three inch file folder with "legal overviews" and "workbooks," which were to be sold to New Jersey customers. Plaintiff paid We The People twenty-five (25%) percent of the retail fee he was required to charge for the overviews and workbooks. If Plaintiff's customers brought the completed workbooks back, Plaintiff was required to fax them to Santa Barbara where the legal forms were prepared. Plaintiff claims that he was not allowed, nor was he taught how, to "prepare" these legal documents. (*See* Pl.'s Opp. Br. at 3). Plaintiff also contends that We The People instructed him not to render assistance in filling out clients' forms. (*Id.*). If the forms prepared in California were not proper or accurate, Plaintiff was required to resubmit the forms to We The People in Santa Barbara for corrections. However, in the case of bankruptcy petitions Plaintiff was required by We The People to sign as the preparer, pursuant to 11 U.S.C. § 110.

On March 13, 2000, Distenfield sent Plaintiff a memorandum confirming a conversation whereby Plaintiff agreed to pay We The People $12,500 on or before April 1, 2000, for the full and final payment on the second territory.[3] On March 20, 2000, Plaintiff tendered We The People a check in the amount of $12,500 in full and final payment of the second territory, and on January 1, 2001, Plaintiff opened his second We The People franchise in Cherry Hill, New Jersey.

On September 12, 2001, nearly two years after executing the original Franchise Agreement, Plaintiff filed the underlying action against We The People in Superior Court, Law Division, Camden County. Plaintiff alleges in Count I, of his four count complaint, that We The People failed to provide adequate disclosure to him during his acquisition of the franchise, in violation of Federal Trade Commission Rule 436, 16 C.F.R. § 436, *et seq.*, which resulted in a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–1, *et seq.* Specifically, Plaintiff claims that under 16 C.F.R. §§ 436.1(a), 436.2(g), 436.2(*o*) Distenfield was required to wait ten (10) business days after providing Plaintiff with the UFOC before accepting Plaintiff's payment, and that the UFOC failed to disclose required information about We The People, its predecessors, affiliates, or its key personnel. Plaintiff contends that this information would have disclosed serious problems with other We The People franchisees regarding such issues as the unauthorized practice of law, fee splitting arrangements with lawyers, and We The People's processes and fees. (*See* Pl.'s Opp. Br. at 3). Plaintiff also claims that the only financial statement supplied in the UFOC was for fiscal year-end 1997, and therefore, the UFOC contained financial statements that did not meet the requirements of 16 C.F.R. § 436.1(a)(20)(i).[4]

Accordingly, Plaintiff contends that We The People violated 16 C.F.R. § 436, *et seq.* by engaging in *per se* affirmative unconscionable commercial practices, deception, fraud, false pretenses, false promises and/or misrepresentations in violation of Section 2 of the New Jersey Consumer Fraud Act.

---

**2.** Under the Second Addendum, the purchase price for the remaining territory in Camden County, New Jersey was changed from $89,500 to $59,500.

**3.** The memorandum also stated that We The People agreed to pay Plaintiff advertising costs on the second territory for the first ninety (90) days of operation of his franchise in that territory.

**4.** In the instant case, 16 C.F.R. § 436.1(a)(20)(i) requires We The People to have provided audited financial statements for fiscal years 1997 and 1998, as well as, interim statements for the first quarter of 1999.

On October 29, 2001, We the People removed the case to this Court. We The People requests that this Court dismiss Count I of Plaintiff's First Amended Complaint pursuant to Fed.R.Civ.P. 12(c) because the Act does not apply to the sale and acquisition of a franchise.

## II.

As the pleadings are closed and a trial date has not been set, this Court will treat Defendants' 12(c) Motion for Judgment on the Pleadings as a 12(b)(6) motion to dismiss. "Courts have noted the similarity of the wording of the standard for a motion for judgment on the pleadings to the wording of the standard for a motion to dismiss under Rule 12(b)." *Sprague v. American Bar Ass'n,* No.CIV.A. 01–382, 2001 WL 1450606, at *1 (E.D.Pa. Nov.14, 2001). Courts therefore review motions for judgment on the pleadings in the same manner as motions to dismiss. *Sprague,* 2001 WL 1450606 at *1 (citing *Rose v. Bartle,* 871 F.2d 331, 342 (3d Cir.1989)) ("We view the standard of review under [another case] as identical to that for review of a dismissal under either Rule 12(b)(6) or Rule 12(c)."); *GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1114 (7th Cir.1995) ("We review a motion pursuant to Rule 12(c) under the same standard as a motion to dismiss under Fed.R.Civ.P. 12(b)...."). This interpretation is further supported by Rule 12(h)(2), which permits courts to rule on Rule 12(b) motions as motions for judgment on the pleadings.[5] Fed.R.Civ.P. 12(h)(2); *Sprague,* 2001 WL 1450606 at *1 (citing 2 James Wm. Moore, et al., *Moore's Federal Practice* § 12.38 (3d ed.2001) ("In fact, any distinction between [a judgment on the pleadings under Rule 12(c) and a motion to dismiss under Rule 12(b)] is merely semantic because the same standard applies to motions made under either subsection.")); *See also Regalbuto v. City of Philadelphia,* 937 F.Supp. 374, 376–77 (E.D.Pa.1995), *aff'd,* 91 F.3d 125 (3d Cir.) (table), and *cert. denied,* 519 U.S. 982,

117 S.Ct. 435, 136 L.Ed.2d 333 (1996) (applying the same standard to motions for judgment on the pleadings as to motions to dismiss under Rule 12(b)); *Constitution Bank v. DiMarco,* 815 F.Supp. 154, 157 (E.D.Pa. 1993). A court will only grant a motion to dismiss a complaint under Rule 12(b) if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Sprague,* 2001 WL 1450606 at *1 (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

Therefore, Federal Rule of Civil Procedure 12(b)(6) provides this Court with the appropriate vehicle by which to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a Rule 12(b)(6) motion, the court will accept as true all of the factual allegations contained in the complaint and any reasonable inferences that can be drawn therefrom. *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). Dismissal of claims under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Although the court must assume as true all facts alleged, "[i]t is not ... proper to assume that the [plaintiff] can prove any facts that it has not alleged." *Associated General Contractors of Calif., Inc., v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Also, when "[c]onfronted with [a 12(b)(6)] motion, the court must review the allegations of *fact* contained in the complaint; for this purpose the court does not consider conclusory recitations of law." *Commonwealth of Pennsylvania v. PepsiCo, Inc.,* 836 F.2d 173, 179 (3d Cir.1988) (emphasis added).

## III.

In the instant case, the parties agree that New Jersey choice of law rules should apply

---

**5.** Federal Rule of Civil Procedure 12(h)(2) provides in pertinent part that, "[a] defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 19, and an objection of

failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Fed. R.Civ.P. 12(h)(2).

to Count I of Plaintiff's First Amended Complaint. Furthermore, since this case is before the Court on diversity grounds, the Court's choice of law is governed by the law of the state in which the Court sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir.1988).

■ It is important to note, however, that the parties to the underlying contract chose California law to govern. Under New Jersey law, if the parties to a contract agree that a particular state's law will govern their rights and duties under the contract, the courts will generally honor the agreement, unless: (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state, which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of Restatement of Conflict § 187, would be the state of the applicable law in the absence of an effective choice of law by the parties. Restatement (Second) of Conflict of Laws § 187; *Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd.*, 847 F.Supp. 1244, 1248 (D.N.J. 1994); *See also Instructional Systems v. Computer Curriculum Corp.*, 130 N.J. 324, 341–42, 614 A.2d 124 (1992).

In order to override the choice of law of the parties to the contract under the considerations of § 187(b), this Court must find: (a) that the application of California law would be contrary to a fundamental policy of New Jersey; (2) that New Jersey has a materially greater interest than California in the determination of the particular question at issue; and (3) that under the general choice of law considerations of § 188 of the Restatement (Second) of Conflict of Laws, New Jersey law would apply. *Newcomb*, 847 F.Supp. at 1248; *See Winer Motors, Inc. v. Jaguar Rover Triumph, Inc.*, 208 N.J.Super. 666, 506 A.2d 817 (App.Div.1986).

Although the three remaining counts of Plaintiff's Complaint may present a situation that calls for the application of § 187(b), at this juncture, we need only rule on Count I, and need not turn our attention to determining the choice of law to be applied to Counts II, III, and IV.

### IV.

■ Having determined that New Jersey law shall apply to Count I, we will next decide whether the New Jersey Consumer Fraud Act ("Act") applies to the sale or acquisition of Plaintiff's We The People franchise. The Act provides in relevant part that: "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person had in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." N.J.Stat.Ann. § 56:8–2.

The Act defines "merchandise" to include "any objects, wares, goods, commodities services or anything offered, directly or indirectly to the public for sale." *See* N.J.Stat.Ann. § 56:8–1(c). It defines "person" to include "any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee ..." *See* N.J.Stat.Ann. § 56:8–1(d). Any "person" who "suffers any ascertainable loss of moneys or property, real or personal," as a result of one of the practices forbidden under the statute, may bring an action under the NJCFA. N.J.S.A. § 56:8–19.

In the instant case, the parties dispute whether the Act applies to the purchase of Plaintiff's We The People franchise. Defendants, relying on the Third Circuit's decision in *J & R Ice Cream Corporation v. California Smoothie Licensing*, 31 F.3d 1259 (3d Cir.1994), argue that "[w]hen an individual or a corporation purchases a franchise, it is not a person in a 'consumer oriented situation,'

and thus the transaction is not covered by the Act." *J & R Ice Cream Corporation*, 31 F.3d at 1274. Plaintiff, on the other hand, argues that the application of the Act is to be decided on a case by case basis and that it is the character of the transaction rather than the identity of the purchaser that determines if the Act is applicable. Plaintiff claims that because the franchise relationship was consumer oriented, the Act therefore applies to Plaintiff's purchase of the We The People franchise. *J & R Ice Cream Corporation*, 31 F.3d at 1273–74; *See, Daaleman v. Elizabethtown Gas Co.*, 77 N.J. 267, 390 A.2d 566, 570 (1978) (concurring opinion) (a utility may be subject to Consumer Fraud Act when it sells merchandise though it is not subject to the Act in making computations for monthly service bills).

However, a franchise purchaser is not the ordinary consumer of merchandise in the marketplace. *See J & R Ice Cream Corp.*, 31 F.3d at 1273–74. Where franchises are available to the general public, their purchase remains excluded from the Act because the item for sale is a business, and not consumer goods and services. *Id.* at 1274; *See Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 179 F.R.D. 450, 470 (D.N.J.1998) (holding that purchasers of wholesale goods for resale are not "consumers" within the NJCFA). Thus, Plaintiff's acquisition of the We the People franchise, which We The People made available to the general public, constitutes the purchase of a business rather than the purchase of a consumer good or service. Franchises "are purchased for the present value of the cash flows they are expected to produce in the future and . . . bear no resemblance to the commodities and services listed in the statutory definition of 'merchandise' or the rules promulgated by the Division of Consumer Affairs." *J & R Ice Cream Corp.*, 31 F.3d at 1274. "While the statute's enumeration of what constitutes merchandise for its purposes is not exhaustive, the Third Circuit has cautioned courts interpreting the statute that they should not extend its definition to items 'wholly foreign to any of the listed examples.'" *Naporano Iron & Metal Co. v. American Crane Corporation*, 79 F.Supp.2d 494, 509 (D.N.J.1999) (citing *J & R Ice Cream Corp.*, 31 F.3d at 1273). Thus,

it is well established that, "[t]he [New Jersey] Consumer Fraud Act does not apply to the sale of a franchise." *J & R Ice Cream Corp.*, 31 F.3d at 1266; *See Naporano Iron & Metal Co.*, 79 F.Supp.2d 494.

Accordingly, this Court finds that the Act clearly does not apply to Plaintiff's purchase of the We The People franchise. Therefore, we are unable to grant Plaintiff relief under any set of facts that can be proved consistent with the allegations set forth in Count I of Plaintiff's First Amended Complaint.

## V.

For the foregoing reasons, we will grant Defendants' Motion for Judgment on the Pleadings as to Count I of Plaintiff's First Amended Complaint. The Court will issue an appropriate Order.