## IN THE MATTER OF JUAN J. RYAN, AN ATTORNEY AT LAW.

Argued October 22, 1974—Decided December 12, 1974.

*Mr. Robert E. Cowen,* Chief, Central Ethics Unit of the Administrative Office of the Courts, argued the cause for the Central Ethics Unit.

*Mr. Jacob R. Mantel* argued the cause for respondent (*Messrs. Mantel and Thelander,* attorneys).

PER CURIAM. This is a disciplinary case. Respondent, a member of the bar of this State, was retained by Edward C. Clarke, a New York attorney representing a decedent's estate, to handle the details of the sale of a five-acre tract of vacant

land in Atlantic County, New Jersey, owned by the estate. A $2500 offer for the land had been submitted by J. Fred Ellis, Jr., an adjoining property owner, which offer was acceptable to Clarke and the executrix of the estate. Accordingly, on June 29, 1970, Clarke wrote to respondent asking him to prepare a contract of sale to Ellis for $2500, forward it to Ellis for his signature and obtain a downpayment from him. The same day that respondent received the letter he got a telephone call from Ellis, who had obtained respondent's name from the Clarke office, saying he was ready to sign a contract "right now." Respondent told Ellis that his secretary was going on vacation for the next few weeks and that respondent would "get to this after she returns." About a week later, respondent telephoned Clarke and "indicated that it was a sort of a low price on the property and that he'd like to take a look at it and see what it was like." Clarke assented, and a few days later respondent drove to Atlantic County and inspected the property. He liked the property, "thought it was beautiful," and got in touch with Clarke who said he had no objection to respondent making a personal offer for the property, whereupon respondent submitted a bid of $3000. Clarke took the matter up with the executrix who was told that the new offer had been made by the New Jersey attorney who had been engaged to represent the estate. According to Clarke, she had no objection to respondent purchasing the property himself and was satisfied with the higher offer. Respondent immediately prepared and caused to be executed a contract of sale naming his wife as the purchaser. In February 1971, after certain title matters had been cleared, the property was conveyed to Mrs. Ryan for a purchase price of $3000.

In the meantime, in early August 1970, Ellis, having heard nothing from respondent, wrote to him about the contract. Respondent did not answer Ellis' letter. Ellis next telephoned respondent, also in early August 1970, and was told by respondent that the property had been sold for a higher price.

Ellis then called Clarke who verified the information and told Ellis that "he understood the sale was final."

Neither respondent nor Clarke told Ellis that respondent was the purchaser, nor was Ellis afforded the opportunity to submit a higher offer. Ellis did not find out until a year later that respondent had purchased the property in his wife's name for $3000. Respondent sold the property on April 17, 1973 for $10,000.

Ellis filed a complaint with the Union County Ethics Committee which, after a full hearing, concluded that, since there was no attorney-client relationship between respondent and Ellis, and since full disclosure had been made to the executrix of the estate, respondent had not violated any of the canons of ethics. The Committee also found that respondent's conduct was not in violation of this Court's holding in *In re Gavel*, 22 *N. J.* 248 (1956). Accordingly, the Union County Ethics Committee decision, dated February 16, 1974, was that the charges against respondent should be dismissed.

Ellis wrote to the Administrative Director of the Courts expressing his dissatisfaction with the foregoing decision. The matter was referred to the Central Ethics Unit of the Administrative Office of the Courts which, after investigation, filed a petition with this Court charging respondent with unethical conduct. On September 23, 1974 respondent was ordered to show cause why he should not be disbarred or otherwise disciplined.

The essential facts heretofore set forth are undisputed. Respondent contends that he cannot be found guilty of any ethical infraction since the record demonstrates that there was no attorney-client relationship between him and Ellis, and there had been a full disclosure made to respondent's client who had no objection to respondent purchasing the property. According to respondent, Ellis was just a person who had submitted an offer to purchase which had not been legally accepted and there was no duty owed Ellis to inform him that respondent was personally interested in the property

and was submitting an offer $500 in excess of that made by Ellis.

We conclude that respondent's conduct in this matter fell far short of the high standards expected of him. While there was no attorney-client relationship between respondent and Ellis, Ellis was dealing with respondent as an attorney who, he understood, was going to prepare a contract of sale. He was not informed that respondent had stepped out of his attorney status and had become personally interested in purchasing the property for himself. Under basic concepts of fair dealing, respondent should have informed Ellis of his changed status and higher bid so that Ellis would at least have had the opportunity to make an informed decision as to what he might do in the circumstances. Granted the executrix ordinarily would be free to sell to whomever she chose respondent still should have made a full disclosure to Ellis instead of letting Ellis assume that respondent was only the attorney representing the estate. In these circumstances the concealment from Ellis amounted to misrepresentation. As was stated in *In re Boyle,* 18 *N. J.* 415, 416 (1955):

> Because of the education and training of members of the legal profession and the opportunities inherent in their practice, they very clearly have a duty and a challenge to exert a wholesome influence by fostering high ideals.

An attorney does not discard his professional standing and obligation to maintain a high standard of conduct when he engages in a business transaction. In *In re Carlsen,* 17 *N. J.* 338, 346 (1955) we said:

> * * * In *In re Genser,* 15 *N. J.* 600, 606 (1954), this court expressly recognized that an attorney who wishes to be a business man must act in his business transactions with high standards and that his professional obligation reaches all persons who have reason to rely on him even though 'not strictly clients.' And in *In re Howell,* 10 *N. J.* 139, 140, 141 (1952), we approved the doctrine that conduct by an attorney which engenders disrespect for the law calls for disciplinary action even in the total absence of the attorney-client relationship.

To the same effect is *In re Gavel, supra,* 22 *N. J.* at 265. This principle is essentially embodied in our DR 1-102(A) (4)(5)(6). See, *In re Carlsen, supra,* 17 *N. J.* at 348-349.

In *Marco v. Dulles,* 169 *F. Supp.* 622, 631 (S.D. N.Y. 1959) it is stated that a lawyer is:

* * * held to the same 'highest standards of ethical and moral uprightness and fair dealing' when acting as a businessman or when acting as a lawyer and is subject to disciplinary action if he fails to maintain those standards in either capacity.

It cannot be doubted that Ellis' experience with respondent, whom he dealt with as an attorney, has resulted in a feeling on his part of frustration, and disillusionment with the trustworthiness of lawyers.

Respondent's conduct was ethically remiss in the particulars heretofore indicated and merits censure. He is hereby reprimanded for such conduct with the admonition that any future transgression of a similar nature on his part will be dealt with more severely.

*For reprimand* — Chief Justice HUGHES and Justices JACOBS, HALL, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—7.