259 N.J. Super. 256 (1992)
612 A.2d 386
LILLIAN WHITMAN, PLAINTIFF,
v.
THE ESTATE OF JULES WHITMAN, THE CHUBB GROUP OF INSURANCE COMPANIES, VIGILANT INSURANCE COMPANY AND FEDERAL INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided June 4, 1992.
*257 Kirk Rhodes (Frost & Rhodes, attorneys) for Plaintiff.
Stephen R. Long and Christine P. Shields (Shanley & Fisher, attorneys) for Defendants Vigilant Insurance Company and Federal Insurance Company.

OPINION
ALLEY, J.S.C.
A. Introduction:
This case involves a portion of the numerous legal issues presented in several lawsuits that have arisen from an August *258 1988 boating accident on Lake George, New York, in which plaintiff's husband, Jules Whitman, the pilot of a motorboat, was killed. Plaintiff was the sole passenger and alleges she was seriously injured. The litigation before this court involves (1) plaintiff's tort claims against her husband's estate, and (2) her assertions that the insurance company defendants owe the estate a defense and indemnification under two liability policies. Plaintiff also is a party to a New York state court lawsuit in which the two moving defendants here, Federal Insurance Company and Vigilant Insurance Company, have already raised the very coverage issues plaintiff has now injected into this case by an amended complaint filed December 9, 1991.
Plaintiff's attorney here, Jack N. Frost, Esq., has filed a complaint on behalf of both Mrs. Whitman and the estate in a civil action in the United States District Court for the Northern District of New York, Albany Division, seeking tort damages from various third parties. Apparently, there are no claims in that action by Mrs. Whitman against the estate. Rather, her tort claims against the estate are the focal point of the fragment of the overall litigation that is before this court, where Frost represents only Mrs. Whitman as plaintiff.
The moving defendants assert in the pending motion that plaintiff's claims against them are barred by the principles underlying the entire controversy doctrine and by fundamental notions of standing, and that her counsel should be disqualified from suing the estate, his own client in the federal action. The insurance company defendants also have sought to recover their cost of litigating this case under the Frivolous Claims Act, N.J.S.A. 2A:15-59.1. In view of the disqualification issue, the court has deferred all other aspects of the motion pending the resolution of that issue.

B. The Facts:

On August 14, 1988, Jules Whitman was operating a powerboat on Lake George and collided with a concrete sea wall. Mr. *259 Whitman died instantly, and Frost has asserted in this case that Mr. Whitman was negligent. Lillian Whitman, his wife and the plaintiff here, sustained personal injuries. The Whitmans have several children who survived Mr. Whitman. On April 10, 1989, plaintiff was named administratrix ad prosequendum of the Estate of Jules Whitman.
On February 19, 1991, Frost commenced this negligence action on behalf of Mrs. Whitman (the "plaintiff") against the Estate of Jules Whitman (the "Estate") in the Superior Court of New Jersey, Law Division, Union County. Frost has testified in this case that Mr. Whitman left a will, located in Frost's office, which has never been probated and that Mrs. Whitman is the sole beneficiary of his estate. According to Frost, his status in this case has been predicated on her interests being identical to those of the Estate.
Plaintiff acknowledged receipt of the complaint on behalf of the Estate on April 19, 1991. Defendants Federal Insurance Company ("Federal") and Vigilant Insurance Company ("Vigilant") received copies of the summons and complaint on April 26, 1991. On May 21, 1991, defendants notified plaintiff that they declined to defend or provide coverage to the Estate.
Frost, as attorney for both Lillian Whitman and the Estate, filed a complaint in a diversity action in the United States District Court for the Northern District of New York (the "federal action") on July 12, 1991, against numerous defendants, alleging claims for strict products liability, negligence and wrongful death. On September 17, 1991, Federal and Vigilant commenced a declaratory judgment action against the Whitmans in New York State Supreme Court, Westchester County (the "New York action"). Federal and Vigilant requested an order that they owed neither a defense nor coverage to the Estate in the New Jersey action. The New York declaratory judgment action is pending.
Dean M. Howland and Jule V. Howland, defendants in the federal action, asserted counterclaims for contributory negligence *260 against Lillian Whitman and the estate on December 4, 1991.
On December 9, 1991, plaintiff filed an amended complaint in this case against the Estate and asserted a declaratory judgment claim against Federal and Vigilant. Plaintiff served the summons and complaint by mail on December 27, 1991.
In support of their disqualification motion, Federal and Vigilant, the moving defendants, rely on R. 1.7(a) of the Rules of Professional Conduct, which provides:
a lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless: 1) the lawyer reasonably believes that representation will not adversely affect the relationship with the other client, and; 2) each client consents after a full disclosure of the circumstances and consultation with the client, except that a public entity cannot consent to any such representation.
They contend that Frost has violated the precept that a lawyer cannot sue his own client. In the federal action, Frost filed a complaint for both the plaintiff here, Mrs. Whitman, and the Estate against other defendants, whereas here he has sued the Estate.
In Count I of the New Jersey action, Frost represents plaintiff in her negligence claim against the Estate. By asserting a claim against the Estate, the moving defendants contend, Frost has switched sides in this dispute, has sued his own client, and violated the Rules of Professional Conduct, the duty of confidentiality, and, at the very least, created the appearance of impropriety. They further contend that Frost's continued representation of both Mrs. Whitman individually and Mrs. Whitman as administratrix of her late husband's estate requires a showing that his actions have not compromised the interests of the public in a fair judicial system; that in this action he has to argue that Mr. Whitman was at fault in order for plaintiff to recover from the Estate, but in the federal action he must argue that the Estate was not at fault, as counterclaims for contributory negligence have been asserted against the Estate; and that Frost must make conflicting decisions in both cases regarding litigation strategy (here, to maximize plaintiff's recovery *261 against the Estate, and in the federal case, to advise the Estate and act on its behalf to preserve the Estate's assets).[1]
When Frost testified in opposition to the disqualification motion, some of his testimony covered his conduct in the federal action that he had filed on behalf of both the Estate and Mrs. Whitman individually in July 1991 in the United States District Court for the Northern District of New York. A New Jersey attorney is not relieved of ethical responsibilities under our Rules when acting in a business capacity (In re Ryan, 66 N.J. 147, 150, 329 A.2d 553 (1974); see also, In re Hurd 69 N.J. 316, 330, 354 A.2d 78 (1976)), and by the same token, a New Jersey attorney representing a New Jersey resident cannot shed those responsibilities when practicing as a lawyer in another state on the basis of a pro hac vice admission, see, Bernick v. Frost, 210 N.J. Super. 397, 510 A.2d 56 (App.Div. 1986). Only in that context, and not in order to make any disposition of issues in the federal action,[2] which plainly would *262 be beyond this court's jurisdiction to attempt, this opinion will deal with Frost's conduct respecting the federal action as well as in this case, insofar as it bears on his actions, judgment, and ethics as raised in or relevant to the motion before this court. Because this opinion includes no ruling intended to regulate the federal action, the court presiding over that suit obviously will be unhampered by this decision in making whatever disposition or ruling therein seems appropriate.

C. Discussion:

In Frost's testimony, he claimed that he only "technically" represented the Estate in the federal action (Tr. 48:6), an assertion apparently advanced for the purpose of trying to show that no conflicting representation has occurred. His explanation for his position was that "Mr. Whitman either was killed instantaneously or died within seconds or minutes after this accident took place without ever regaining consciousness ..." (Tr. 48:11-13). Thus, he asserted, the federal action is of no significance to the Estate because the Estate's claim was barred by the New York statute of limitations, or in Frost's words, "I didn't believe even when we filed the lawsuit in New York that he [the decedent's estate] had an actual damage claim." (Tr. 54:25-55:1).
Frost's testimony acknowledged, however, that in the federal action he "owe[s] the Estate a duty of complete and undivided loyalty in [his] ... representation of the Estate...." (Tr. 38:8-11). He asserted that his contingent fee agreement in this matter covered his representation of the Estate in the federal *263 action as well as his representation of Mrs. Whitman in this action, in which she is suing the Estate. (Tr. 82:13-23).
In sum, the Estate was and is Frost's client. His proffered excuse that his representation of the Estate is merely technical is palpably without merit. Under these circumstances, Frost in fact has a conflict of interest, and therefore RPC 1.7(a) requires the court to consider whether Frost "reasonably believes" that he can continue with the conflicting representation.
In determining reasonableness, the court applies an objective test and is not bound by Frost's professed subjective beliefs concerning the propriety or effect of his conduct. The reasonableness parameters are not those of the most ethically  punctilious nor of those, on the other hand, whose ethical standards push the boundaries of impropriety. The reasonableness requirement is taken here to mean generally accepted standards of decency, honesty, and good judgment. That the Rules contemplate the application of an objective test as to the reasonableness issue can be inferred from RPC 1.5(a), which enumerates several non-subjective factors for determining the reasonableness of an attorneys fee.
The potential adverse effects on Frost's clients of the conflicting representation should be weighed in the balance. First, by filing this action, Frost has dealt a potentially serious blow to the Estate, his other client, in the federal action. Here, to maximize the recovery of his client Mrs. Whitman, he has to maximize the negligence of Mr. Whitman, whereas that stratagem is directly adverse to the interests of one of his clients in the federal action, namely, the Estate. (In this connection, the court notes but does not credit Frost's testimony that the Superior Court complaint against the Estate has "no impact" on the federal action (Tr. 61:19).)
Moreover, Frost's professed reasonable belief ignores the potential adverse impact of his conduct on the credibility of Mrs. Whitman in this action and in the federal action as well. While the issue will be up to the federal court to decide, it may *264 very well be that Mrs. Whitman's claim here that her husband was 100 percent liable for her injuries could be used to attack her credibility in that action.
Another assertion by Frost that forms part of his RPC 1.7 "reasonable belief" explanation is apparently a bizarre attempt to argue that the court should disregard form and look to the substance of a transaction. Frost asserted that in reality he has only one client in this case, Mrs. Whitman, who he testified is the sole beneficiary of the Estate. The court would reject that argument even if it were based on fact, because the Rules of Professional Conduct are not to be so lightly dismissed. The truth is, however, that Mr. Whitman's will  which was in the possession of Frost's office when he testified that Mrs. Whitman is the only beneficiary of the Estate and a copy of which has been furnished to the court to incorporate in the record,  actually shows that the Whitman's children are beneficiaries under the will. Significant, as well, is Frost's apparent willingness, in his ardent pursuit of his single client/no conflict theory, to sweep under the carpet the separate intestacy interests that may exist if the will cannot be probated.[3]
Upon consideration of all the evidence, with particular emphasis on the factors just enumerated, the court determines that Frost cannot reasonably believe that his directly conflicting representation of the Estate will not adversely affect his clients and his relationship with them. The showing in favor of disqualification is convincing and compelling, but even if the showing had left some doubt, "Doubts as to whether an attorney should be disqualified are to be resolved in favor of disqualification," Manoir-Electroalloys Corp. v. Amalloy Corp., 711 F. Supp. 188, 194 (D.N.J. 1989).
*265 The actual or potential impact of Frost's conduct on his clients' recovery, and on Mrs. Whitman's persuasiveness as a witness, are compelling examples of just the conduct that faithful adherence to RPC 1.7(a) should avoid. An attorney proceeding with a conflict, even pursuant to a good faith understanding that client consent has been obtained, is nevertheless at significant risk from problems inherent in a conflict. Indeed, because of the need for public confidence in the fair and just administration of decedent's estates, the court further concludes that under RPC 1.7(c)(2), even if there were no conflict, the "appearance of impropriety" is so marked here that "multiple representation is not permissible...." See, Baldasarre v. Butler, 254 N.J. Super. 502, 604 A.2d 112 (App.Div. 1992). In the language of the rule, this case is an example of "situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of public disservice to either the public interest or the interest of one of the clients," in particular, the Estate's interests.
Frost was not at liberty to deal with his clients' respective positions by considering the interests of Mrs. Whitman and the Estate to be identical. They are not identical, and they have serious potential for severe conflict. The case involves in effect a passenger and a driver, where well-settled law precludes their representation by the same attorney except when liability is undisputed, see, In re Shaw, 88 N.J. 433, 443 A.2d 670 (1982); DeBolt v. Parker, 234 N.J. Super. 471, 560 A.2d 1323 (Law Div. 1988). No difference in treatment should result here simply because the accident happened on a lake instead of a road, especially because Frost's complaint in the federal action does nothing to eliminate any disputes as to liability. (This principle, indeed, might well present sufficient grounds to disqualify Frost on the alternative ground that under RPC 1.7(c)(1), it is one of the "cases or categories of cases involving conflicts or apparent conflicts ... [in which] consent to continued representation is immaterial....")
*266 For all these reasons, the court will grant the motion to disqualify Frost and his firm in this action pursuant to RPC 1.7(a). As already noted, this court's ruling is without prejudice to any rulings that may be made in the federal action that affect that case.[4]
NOTES
[1] By the return date of the disqualification motion, no affidavit or certification (or even any unsworn statement) by Frost had been filed, so the record contained nothing that set forth as much as a bare assertion by Frost under RPC 1.7(a) that his representation of conflicting interests was reasonable. The record in opposition to the motion contained only a certification or affidavit (it is unclear from the document itself which was intended) signed by Lillian Whitman, served together with a brief signed by an associate in Frost's office. Frost testified he was unfamiliar with that brief, and after attempting other explanations, he ultimately decided to say that he had wanted to distance himself from the motion (Tr. 97:9-12).

Faced with this absence of the factual support required by RPC 1.7(a)(1), but recognizing the potential importance of the issue to Frost's clients, the court adjourned the motion to afford Frost the opportunity at the hearing of the motion to testify, if he wished to do so, as to the reasonableness of his actions under that Rule. At the hearing, the court noted its concern over the paucity of the record on the RPC 1.7(a) reasonable belief issue, and offered Frost the opportunity to testify. Frost elected to testify and to be represented by his partner, Kirk Rhodes, Esq., and the testimony proceeded, with Frost's client Lillian Whitman seated at counsel table throughout the hearing.
[2] This court makes no ruling in this case that is intended to invade the province of the federal court in dealing with the action before that court. It is not, however, beyond this court's province to take into account the conduct of a member of the bar of New Jersey, even if it occurred in another proceeding, for purposes of determining what consequences should ensue in a related New Jersey case in which the same attorney is also participating and in which that attorney's ability, judgment, and ethics have been put squarely in issue.
[3] Because of the facts that became known to the court on this motion, and in order to minimize potential prejudice to beneficiaries, the court's order will direct Mrs. Whitman (the named executrix under the will that Frost furnished to the court) to lodge the original will with the Surrogate and to send written notice thereof and a true copy of the will to each beneficiary designated in the will.
[4] When evaluating the motion to disqualify, the court has not addressed movants' contention that Mrs. Whitman's personal consent to the conflicting representation was ineffectual. It is plain, however, that her interests are not identical to the Estate's and the court therefore is constrained to view her purported consent as ineffective insofar as the Estate is concerned. In any event, even if the consent were effective as to both Mrs. Whitman and the Estate, Frost must show both consent by the client and the reasonableness of his own belief under RPC 1.7. The court also declines the movants' invitation to examine Frost's conduct in unrelated cases. They urge that "Frost's testimony is not worthy of belief" and that he "has a recorded history of misrepresenting facts to courts to advance his own pecuniary interests," citing Decibus v. Woodbridge Township Police Dept., 1991 WL 59428 (D.N.J. April 19, 1991) (Judge Wolin), Carter v. Sanders, 1992 WL 33844 (D.N.J. Feb. 20, 1992) (Judge Fisher), and Bernick v. Frost, 210 N.J. Super. 397, 510 A.2d 56 (App.Div.) certif. den., 105 N.J. 511, 523 A.2d 158 (1986). But there is no reason for this decision to encompass Frost's conduct in unrelated cases when the record in this case alone adequately supports the decision reached. The court has decided this motion without any need to rely on Decibus, Carter, and Bernick.