**Iman ABDALLAH, Plaintiff,**

v.

**Vincent PILEGGI, et al., Defendants.**

**Civil A. No. 93–2172 (JCL).**

United States District Court,
D. New Jersey.

Feb. 14, 1996.

Iman Abdallah, Abdallah & Muckelroy, South Orange, New Jersey.

H. Curtis Meanor, Podvey, Sachs, Meanor & Catenacci, Newark, New Jersey.

Michael G. Tierce, Schnader, Harrison, Segal & Lewis, Philadelphia, PA.

David M. Kupfer, O'Brien, Liotta & Mandel, Union, New Jersey.

## OPINION

HEDGES, United States Magistrate Judge.

### INTRODUCTION

I conducted a telephone conference on January 31, 1996. The purpose of the conference was to discuss defendants' allegation that Mr. Abdallah, a member of the Bars of this Court and of the State of New Jersey, could not prosecute this civil action as he is ineligible to practice law in the State for failure to make payment to the New Jersey Lawyers' Fund for Client Protection ("the Fund"). I assumed for the purpose of scheduling dispositive motions that a member of our Bar must also be eligible to practice law in the State of New Jersey. I am now satisfied that this assumption was incorrect.[1]

### DISCUSSION

New Jersey Court Rule ("R.") 1:28 governs the Fund. R. 1:28–2(a) provides that, with certain exceptions, "each holder of a plenary license to practice law in the State of New Jersey shall pay annually to the treasurer of the Fund a sum that shall be determined each year by the [New Jersey] Supreme Court." It further provides that, "[t]he treasurer shall annually report the names of all attorneys failing to comply with the provisions of this Rule to the Supreme Court for inclusion on the list of those attorneys deemed ineligible to practice law in New Jersey by order of the Court." See Matter of Costanzo, 115 N.J. 428, 432, 558 A.2d 1309 (1989) (practice of law while on Ineligible List violates Rule of Professional Conduct ("RPC") 5.5(a)). Claims "resulting

from the dishonest conduct of a member of the bar of the state or an attorney admitted pro hac vice acting either as an attorney or fiduciary" may be considered for payment. R. 1:28–3(a). R. 1:28–3(a)(1) provides that, for a claim to be considered, dishonest conduct must have been "engaged in while the attorney was a practicing member of the Bar of this State or admitted Pro Hac Vice in a matter pending in this State."[2]

I am in receipt of correspondence from Kenneth J. Bossong, the Director & Counsel of the Fund, addressed to Ms. Santoro. Mr. Bossong advised that Mr. Abdallah was admitted to the New Jersey Bar on December 21, 1989. Mr. Bossong further advised that, "[d]ue to not responding to his 1994 billing with the required fee payment, Mr. Abdallah was declared ineligible to practice law in New Jersey on December 12, 1994 and remains on the Ineligible List."

█ General Rule 4A ("Scope of Admission") provides:

The bar of this Court shall consist of those persons heretofore admitted to practice in this Court and those who may hereafter be admitted in accordance with these Rules.

General Rule 4B deals with New Jersey attorneys:

Any attorney licensed to practice by the Supreme Court of New Jersey may be admitted as an attorney at law on motion of a member of the bar of this Court, made in open court, and upon taking the prescribed oath and signing the roll.

---

1. When the Complaint was filed on May 20, 1993, Mr. Abdallah represented himself as a pro se litigant. On April 4, 1994, after I had denied a request by him for an award of attorney's fees, the firm of Abdallah and Muckelroy was substituted as counsel for Mr. Abdallah. Thus, Mr. Abdallah now appears both as plaintiff and as a member of the firm representing himself. I leave for another day the possible consequences of this schizophrenic appearance, although Mr. Abdallah might have avoided the dispute before me had he remained a pro se litigant. See 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally").

2. The conduct must have been engaged in by an attorney who "has been suspended, disbarred or placed in disability inactive status, has resigned with prejudice or has pleaded guilty to, or been convicted of embezzlement or misappropriation of money or other property." Alternatively, an ethics committee may certify a claim to the trustees of the Fund as an "appropriate matter for their consideration." The trustees may also consider a claim, "[w]here an ethics committee does not act and an attorney cannot be located." R. 1:28–3(a)(2). Should this Court impose an obligation to make payment to the Fund, it would presumably authorize district ethics committees established pursuant to R. 1:20–3 to act with regard to members of our Bar.

General 4B establishes a link between our Bar and that of the State. "Because there is no *federal* procedure in the district court for determining an applicant's fitness to practice law before it, the court may properly rely on prior admission to the bar of the supreme court of the state in which the district court sits." *Matter of Roberts,* 682 F.2d 105, 108 (3d Cir.1982) *(per curiam )* (emphasis in original). The federal-state link has been described as follows:

> Plenary membership in the District Court's bar is tied directly to licensure in the State of New Jersey. Rule 4B. The link between federal and state admission is so strong that the federal Court participates in a joint admission ceremony with the New Jersey Supreme Court where each new state licensee who pays the required one-time fee (see Rule 4I) is simultaneously admitted to the federal bar. Participation in the admission ceremony is not required; an attorney wishing to be admitted by mail can obtain the necessary forms from the Clerk of the Court. [Lite, *New Jersey Federal Practice Rules,* Comment 2a to General Rule 4 (1996) ].

The General Rules do not impose any continuing monetary obligation on members of our Bar. Rule 4I ("Admission Fee") provides:

> An attorney admitted to the bar of this Court shall pay an admission fee in the amount set by the Court. The Clerk shall collect such funds and maintain them in the manner set forth by the Court in the Plan for Administration and Operation of the Attorney's Admission Fee Account. Such funds are to be used for projects which the Court determines are for the benefit of the bench and bar in the administration of justice within the District.

The question presented is whether the link between federal and State admission contemplates that, as a condition of practice before this Court, a member of our Bar must make payment to the Fund.

Licensure to practice law in the State provides assurance to this Court than an attorney has met standards of character and competency. *See New Jersey Bar Ass'n v. Northern New Jersey Mortgage Associates,* 32 N.J. 430, 436, 161 A.2d 257 (1960). Qualifications for State licensure are set forth in *R.* 1:27–1(a). Separate qualifications for practice appear in *R.* 1:21–1(a). Character and competency are not within the latter.

■ Being on the Ineligible List does not effect licensure but, instead, ability to practice. *R.* 1:28–2(a). In *State v. Green,* 274 N.J.Super. 15, 643 A.2d 18 (App.Div.), *certif. denied,* 137 N.J. 312, 645 A.2d 141 (1994), the defendant argued on appeal that he had been denied effective assistance of counsel. During trial his attorney had been ineligible to practice law for failure to make payment to the Fund. In rejecting the defendant's argument, the Appellate Division stated:

> Both the Sixth Amendment and our Constitution (*N.J. Const.* art. I, ¶ 10) direct that in all criminal prosecutions the accused shall have the right to the assistance of 'counsel' in his defense. We do not equate the counsel to which these constitutional provisions refer with a 'member of the bar in good standing,' in common parlance. As we see it, R.R.'s default in payment of the requisite assessment and his resulting decertification differ from a disciplinary suspension or disbarment. *While we do not endorse the attorney's gross inattention to our rules, this oversight had no connection with the lawyer's character, intellectual acuity, or dedication to the client's interest.* '[S]uspensions used to wring money from lawyers' pockets do not stem from any doubt about their ability to furnish zealous and ·effective assistance.' *Reese v. Peters,* 926 F.2d 668, 670 (7th Cir.1991). Lawyers who do not pay their assessments violate a legal norm, but not one established for the protection of their clients. *Ibid.* [274 N.J.Super. at 26, 643 A.2d 18 (emphasis added) ].

Failure to make payment to the Fund implicates neither character nor competence.

■ Our reliance on State licensure derives from State standards of character and competency. General Rule 4B requires that, prior to admission to practice in this Court, an attorney be licensed by the State. The plain language of that rule does not support the imposition of a continuing obligation to

make payment to the Fund. Likewise, the intent of General Rule 4B would not be furthered by imposition of that continuing obligation.[3]

\* \* \*

Allyn Z. Lite, in *New Jersey Federal Practice Rules* (1996), states that, "attorneys admitted to plenary membership in the Court's bar are subject to all applicable rules of the New Jersey Supreme Court even as to matters handled in the federal system." Comment 2a to General Rule 4. Mr. Lite cites *Kelley Drye & Warren v. Murray Industries, Inc.,* 623 F.Supp. 522 (D.N.J.1985) and *Guralnick v. Supreme Court of New Jersey,* 747 F.Supp. 1109 (D.N.J.1990), aff'd mem., 961 F.2d 209 (3d Cir.1992).

The plaintiff in *Kelley Drye & Warren* was a New Jersey law firm which had instituted a diversity action against a former client for recovery of legal fees and disbursements. The former client then filed a request for compulsory fee arbitration under *R.* 1:20A. Judge Debevoise held that in electing to practice law in the State the plaintiff law firm "undertook to do so in accordance with the Rules and procedures established by the New Jersey Supreme Court." 623 F.Supp. at 524. Judge Debevoise went on to hold that the New Jersey fee arbitration system was a matter of substantive law which should be enforced by this Court and that the civil action pending before him would be stayed pending fee arbitration. 623 F.Supp. at 526, 528.

In *Guralnick,* Judge Fisher rejected constitutional and antitrust challenges to the compulsory fee arbitration system. 747 F.Supp. at 1113–18. The plaintiff in *Guralnick* were two New Jersey attorneys who sought to avoid participation in a fee arbitration. 747 F.Supp. at 1110–11. In this con-

text, Judge Fisher recognized—as had Judge Debevoise—that when an attorney "voluntarily sought entry into the practice of law in New Jersey," he submitted to the "rules and regulations promulgated by the New Jersey Supreme Court." 747 F.Supp. at 1116.

The United States District Court for the District of New Jersey "controls whom it will recognize as members of its bar. It is not a matter within the direct control of any state court." *Kennedy v. Bar Ass'n,* 316 Md. 646, 561 A.2d 200, 208 (1989). "One of the inherent powers of any federal court is the admission and discipline of attorneys practicing before it." *In re Corn Derivatives Antitrust Litigation,* 748 F.2d 157, 160 (3d Cir.1984), *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985). That being said, it cannot be disputed that a member of our Bar admitted to practice pursuant to General Rule 4B incurs obligations as a member of the New Jersey Bar. *Kelley Drye & Warren* and *Guralnick* both support this proposition. *See Whitman v. Estate of Whitman,* 259 N.J.Super. 256, 261, 612 A.2d 386 (Law Div.1992) ("New Jersey attorney representing a New Jersey resident cannot shed those [ethical] responsibilities when practicing as a lawyer in another state").

In *Whitman,* the plaintiff widow brought suit in the Law Division against the estate of her late husband to recover for personal injuries sustained in a boating accident. The attorney who represented the widow in the Law Division also brought a tort action on behalf of the widow *and the estate* in the United States District Court for the Northern District of New York arising out of the accident. The Law Division held that this representation violated RPC 1.7(a). 259

---

**3.** The purpose of the Fund is to "provide protection for the clients of all attorneys practicing in this State." Pressler, *Current N.J. Court Rules,* Comment 6 to *R.* 1:28. Exempted from payment are newly-admitted attorneys, *R.* 1:28–2(b)(1), and attorneys who have been admitted for fifty years or more. *R.* 1:28–2(b)(2). Neither exemption—nor the requirement of payment by all attorneys who fall "between" the exemptions—is related to character or competency. Likewise, admission to the New Jersey Bar, rather than ability to engage in the practice of law, gives rise

to a payment obligation: "[A] member of the Bar of New Jersey ... shall be deemed to be engaged in the practice of law ... if he holds an office, position or employment for which his admission to the Bar of New Jersey is a qualification even though precluded from engaging in any other gainful pursuit while holding such office, position or employment (for example, a full-time judge)." Clients' Security Fund of the Bar of New Jersey, Rule and Regulation 2.3, 92 *N.J.L.J.* 113 (1969).

N.J.Super. at 262–66, 612 A.2d 386. The court was careful to state:

> This court makes no ruling in this case that is intended to invade the province of the federal court in dealing with the action before that court. It is not, however, beyond this court's province to take into account the conduct of a member of the bar of New Jersey, even if it occurred in another proceeding, for purposes of determining what consequences should ensue in a related New Jersey case in which the same attorney is also participating and in which that attorney's ability, judgment, and ethics have been put squarely in issue. [259 N.J.Super. at 261–62 n. 2, 612 A.2d 386].

Obligations incurred by admission to the State Bar are separate—but may bear on—obligations incurred by General Rule 4B admission to practice here.

The General Rules recognize that, under certain circumstances, an attorney admitted to practice need not be admitted to the New Jersey Bar. General Rule 4E provides for admission of patent attorneys who are not admitted to the New Jersey Bar if admission is "limited to cases solely arising under pat-

ent laws of the United States or elsewhere." General Rule 4F provides for admission of attorneys who represent the United States. *See Matter of Roberts, supra,* 682 F.2d at 108.[4]

The General Rules also incorporate specific New Jersey Court Rules. *See* General Rule 4C (attorney admitted *pro hac vice* "deemed to have agreed to take no fee in any tort case in excess of the New Jersey State Court Contingency Fee Rule"), General Rule 6A ("Rules of Professional Conduct * * * as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar"); General Rule 7G.3 ("Filing, service and notice of the petition [for reinstatement after suspension or disbarment] shall be in accordance with the rules and regulations promulgated by the Disciplinary Review Board appointed by the Supreme Court of New Jersey"). These specific incorporations are the product of a deliberate rule-making process. *See* 28 U.S.C. §§ 2071, 2077. Absent specific incorporation into the General Rules, I deem it inappropriate to "infer" the incorporation of any New Jersey Court Rule without recourse to that process.[5]

\* \* \*

4. This is not intended to draw an analogy between patent lawyers and attorneys who represent the United States, on the one hand, and attorneys admitted pursuant to General Rule 4B and are on the Ineligible List. My reference to General Rules 4E and 4F is simply intended to demonstrate that the Court does not require all attorneys admitted to practice before it to be admitted to practice in the State.

There is one area of "disagreement" between the Court and the New Jersey Supreme Court with regard to practice by attorneys admitted to their respective bars. *R.* 1:21–1(a) requires an attorney admitted to practice law in the State to maintain a *bona fide* office in New Jersey. It is an ethical violation to practice law in the State without doing so. RPC 5.5(a) ("A lawyer shall not practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction"). There is no such requirement imposed on a member of our Bar. Lite, Comment 3c to General Rule 4 and Comment 2 to General Rule 7.

This distinction between federal and state practice does bear on one area of concern. In *Matter of Roberts, supra,* the Third Circuit Court of Appeals stated that, "admission to state bar membership tends to protect the interests of the public. For example, when a choice of either a federal or a state forum is available in a particu-

lar case an attorney admitted only to the federal court may choose that forum solely for that reason, possibly downgrading the interests of his client." 682 F.2d at 108. An attorney admitted to practice in this Court but who does not maintain a *bona fide* office in New Jersey is, of course, in this very situation. Nor is this situation any different from that in which there is a choice between this Court and the Southern District of New York as a forum and an attorney is admitted only to the former. The appropriate response to any of these examples should be full disclosure to the client of the limitation on the attorney's practice. *See* RPC 1.2(e) ("when a lawyer knows that a client expects assistance not permitted by the Rules of Professional Conduct or other law, the lawyer shall advise the client of the relevant limitations on the lawyer's conduct"); RPC 1.7(b) ("A lawyer shall not represent a client if the representation of that client may be materially limited * * * by the lawyer's own interests" unless "the client consents after a full disclosure").

5. General Rule 44 does provide that, "[i]f no procedure is especially prescribed, the Court and parties shall proceed in any lawful manner not inconsistent with the Constitution, the Civil and Criminal Rules, these Rules, or any applicable statute. In such instances, the procedure and

This conclusion is consistent with the Fund's own interpretation of its scope. General Rule 4C governs the appearance of attorneys on a *pro hac* basis. In 1992 the Lawyers Advisory Committee for this Court made an informal inquiry to the Fund with regard to requiring such attorneys to make payment to the Fund. In response, the Lawyers Advisory Committee was advised that, "although out-of-state *pro hac vice* lawyers were charged the security fund fee, the fund would not reimburse any victims of out-of-state lawyers." Minutes of June 24, 1992 meeting of Lawyers Advisory Committee at 1 (on file with the Clerk of the Court).[6] The Fund's interpretation is consistent with the plain language of *R.* 1:28–3(a)(1), which speaks of dishonest conduct committed "while the attorney was a practicing member of the Bar *of this State* or admitted Pro Hac Vice in a matter pending *in this State.*"

(emphasis added). The United States District Court for the District of New Jersey may be geographically coterminous with the State of New Jersey, but an attorney engaged in practice before this Court does not practice "in the State." [7]

### CONCLUSION

For the reasons set forth above, defendants' application premised on Mr. Abdallah's failure to make payment to the Fund is denied.[8]

---

practice of the Courts of the State of New Jersey may be considered for guidance." Allyn Z. Lite explained the purpose of this rule as follows: "[O]ccasions arise where no specific procedure is prescribed to deal with the particular facts of a given case. For that unusual situation, the Court has adopted Rule 44 as a catch-all rule." Lite, Comment to General Rule 44. General Rule 44 permits judicial officers to consider New Jersey practice when dealing with particular matters. General Rule 44 is not intended to incorporate by reference any specific New Jersey court rule, nor does it justify imposition of a continuing obligation to make payment to the Fund.

6. At the time one or more judicial officers required attorneys who appeared *pro hac* to make payment to the Fund. The Fund presumably looked upon such payment as a "voluntary contribution" to its assets.

7. This interpretation of the General Rules avoids what I deem to be serious questions. First, should this Court, as an arm of the United States Government, require a member of its Bar to make any payment to a State agency such as the Fund? An argument could be made that any such payment should be made not to the State agency but rather to the United States Treasury or the Attorney's Admission Fee Account. If the latter, should payment be made on a continuing basis? Should this Court establish a federal equivalent to the Fund?

Second, what are the implications of directing payment to the Fund? Does this give the New Jersey Supreme Court, though the mechanism of the Fund, some degree of control over, or power to define, the conduct of our Bar? *See R.* 1:28–3(b) (trustees of Fund have "sole discretion" to "determine which eligible claims merit reimbursement"); *R.* 1:28–4(b) ("trustees may apply

to the Supreme Court for interpretations of these rules and of the extent of their powers thereunder and for advice regarding the proper administration of the Fund"); *R.* 1:28–6(a) (trustees and others "may issue a subpoena or notice in lieu of subpoena in the name of the Clerk of the Superior Court" for persons or things). See also *supra,* note 2 at p. 1116.

8. I need not address the effect of this ruling on Mr. Abdallah's status as a member of the State Bar. *See, e.g., In re Peterson,* 163 B.R. 665, 671–75 (Bankr.D.Conn.1994) (discussing "federal practice exception" to state prohibition of unauthorized practice of law and whether attorney unlicensed in Connecticut may there engage in bankruptcy practice); *Kennedy v. Bar Ass'n, supra,* 561 A.2d at 207–11 (analyzing whether "a person who is not admitted to practice law in Maryland holding himself out to the public as an attorney engaged in the general practice of law in Maryland from a principal office in Maryland" is engaged in unauthorized practice of law in face of contention that he is engaged in practice of "federal and non-Maryland law").

What constitutes "the practice of law" is for the New Jersey Supreme Court to decide on a case-by-case basis. *In re Opinion No. 24,* 128 N.J. 114, 122, 607 A.2d 962 (1992). That court has not spoken in this area, although the Committee on the Unauthorized Practice of Law (established by *R.* 1:22) has on several occasions: Opinion No. 7, 94 *N.J.L.J.* 1077 (1971) (nonadmitted attorney may have an office and practice before federal agencies in New Jersey as a layman if activities restricted but may not "practice federal law here generally"); Opinion No. 9, 95 *N.J.L.L.* 269 (1972) (describing activities in which nonadmitted patent attorney or agent may not lawfully engage in within New Jersey).