# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0882-19

C.E.B.,

    Plaintiff-Respondent,

v.

C.S.B.,

    Defendant-Appellant.

_____

Argued December 15, 2021 – Decided March 14, 2022

Before Judges Gilson and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-0262-20.

Dominick Succardi argued the cause for appellant (The Law Offices of Dominick Succardi, LLC, attorneys; Dominick Succardi, on the briefs).

Tamara L. Loatman-Clark argued the cause for respondent.

PER CURIAM

Defendant appeals from a final restraining order (FRO) entered under the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35, based on a predicate act of harassment, N.J.S.A. 2C:33-4. We affirm because the trial court's factual findings are supported by substantial credible evidence, and it correctly applied the law.

I.

We discern the facts from the record developed at a five-day trial conducted on June 21, 2019, August 21, 2019, August 23, 2019, September 9, 2019, and September 13, 2019. Both parties were represented by counsel and the court heard testimony from five witnesses: plaintiff; defendant; T.J., an employee of the Essex County Domestic Violence Intake Unit and acquaintance of defendant; M.C., who previously dated defendant; and J.E., a friend of defendant.[1]

The parties had been in a dating relationship for several years and they had a child together. The child was born in 2010. The parties ended their relationship in 2012 but continued to deal with each other concerning custody and parenting time issues related to their child.

---

[1] We use initials to protect the confidentiality of the participants in these proceedings. R. 1:38-3(d)(10).

On May 2, 2019, the parties appeared in court for a child-support hearing. Following the hearing, they exchanged a series of text messages. Defendant's messages became progressively more aggressive and included numerous graphic profanities and emojis of a middle finger.[2]

On May 7, 2019, plaintiff applied for and obtained a temporary restraining order (TRO) based on harassment as reflected in the text messages. The TRO also noted a history of domestic violence, including physical assaults and abuse.

Defendant filed a counter TRO alleging harassment. Both parties' TROs were filed in Essex County and there were several initial court hearings in Essex County. The matter was later transferred to Hudson County for trial after plaintiff announced that she intended to call T.J. as a witness.

At trial, plaintiff testified about the parties' relationship and several instances of domestic violence. She described an incident in 2008 when defendant slapped her and forced her to have sex with him. She also described an incident that occurred at a tattoo parlor. She explained that she had gone to

---

[2] An "emoji" is "any of various small images, symbols, or icons used in text fields in electronic communication (as in text messages, email, and social media) to express the emotional attitude of the writer, convey information succinctly, [or] communicate a message playfully without using words." Emoji, Merriam-Webster, https://www.merriam-webster.com/dictionary/emoji (last visited Mar. 1, 2022).

A-0882-19

the parlor to get a tattoo and defendant had come to the parlor, grabbed her and eventually she wound up on the ground covering her face trying to avoid being hit. She also described an incident that occurred one morning when she was getting ready to go to work. The parties got into an argument and when she got in her car to go to work, defendant approached her and grabbed her by the neck.

Plaintiff then testified about the text exchange that had caused her to seek the TRO. Portions of the text exchange were read into the record by the trial court. During those text exchanges, defendant directed numerous profanities at plaintiff and repeatedly told her to "suck my d[**]k." He also told plaintiff that her opinion did not matter, and he followed that statement with eleven emojis of a middle finger.

Defendant testified that he texted plaintiff after the May 2 court hearing because he was upset that plaintiff had brought him to court for arrears with child support. He explained that he was facing other legal issues, including being detained because of his immigration status. He texted plaintiff to ask her to "[d]rop the child support" and to "[g]ive [him] a chance to get back on [his] feet." He said he used profanities in his text messages because he was upset with plaintiff and felt that she was "trying to go [after] everything that she can to get [him] out of [their] son's life."

4

After hearing the evidence at trial, the court found that defendant's text messages to plaintiff constituted harassment under subsection (a) of N.J.S.A. 2C:33-4. In that regard, the court found that defendant's text messages used "coarse language" "to cause annoyance or alarm" and that defendant had sent the messages seeking to get plaintiff's attention and that the messages were "abusive."

In making its findings, the court found plaintiff's testimony to be credible and it did not find defendant's testimony credible. Relying on plaintiff's testimony, the court also found that there was a history of domestic violence. Accordingly, on September 13, 2019, the court entered an FRO against defendant. Defendant now appeals from that FRO.

II.

On appeal, defendant makes five arguments contending that (1) plaintiff failed to establish the predicate act of harassment; (2) the trial court erred in relying on facts and documents not in evidence; (3) plaintiff sought the FRO to give her an advantage in the child-custody dispute; (4) the trial court abused its discretion in finding plaintiff credible; and (5) a new trial should be ordered because plaintiff's attorney was ineligible to practice law at the time of the trial. We are not persuaded by any of these arguments.

A-0882-19

Our scope of review of an FRO is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). We accord substantial deference to family courts' findings of fact because of their special expertise in family matters. N.J. Div. of Youth and Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). That deference is particularly strong when the evidence is largely testimonial and rests on a court's credibility findings. Gnall v. Gnall, 222 N.J. 414, 428 (2015). We will "not disturb the factual findings and legal conclusions of the trial [court] unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Balducci v. Cige, 456 N.J. Super. 219, 233 (App. Div. 2018) (alteration in original) (quoting In re Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 506 (2016)).

When determining whether to grant an FRO under the Act, a judge must undertake a two-part analysis. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125.

Second, the judge must determine whether a restraining order is necessary to protect the plaintiff from immediate harm or further acts of violence. Id. at 126.

The judge here determined that defendant committed the predicate act of harassment. Under N.J.S.A. 2C:33-4,

> a person commits a petty disorderly persons offense [of harassment,] if, with purpose to harass another, he [or she]:
>
> a. Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

A "'finding of a purpose to harass may be inferred from the evidence presented,' and we have observed that '[c]ommon sense and experience may inform that determination.'" J.D. v. M.D.F., 207 N.J. 458, 477 (2011) (alteration in original) (quoting State v. Hoffman, 149 N.J. 564, 577 (1997)). Our Supreme Court has construed "'any other course of alarming conduct' and 'acts with purpose to alarm or seriously annoy' as repeated communications directed at a person that reasonably put that person in fear for his [or her] safety or security

7

or that intolerably interfere with that person's reasonable expectation of privacy." State v. Burkert, 231 N.J. 257, 284-85 (2017).

Having reviewed the record, we conclude that there was sufficient credible evidence supporting the trial court's determination that defendant committed the predicate act of harassment under subsection (a). The court found that defendant's text messages used offensively coarse language in a manner likely to cause annoyance or alarm. The court also found that the messages had been sent deliberately with the purpose to harass plaintiff. Those findings satisfy the elements of harassment under subsection (a). See N.J.S.A. 2C:33-4(a).

We also conclude that there was credible evidence supporting the court's finding that plaintiff needed a restraining order. The court credited plaintiff's testimony concerning three prior instances of domestic violence, all of which involved physical assaults and one of which involved a sexual assault. Accordingly, we are satisfied that the FRO in favor of plaintiff was necessary to protect her from further abuse by defendant and there was sufficient evidence in the record supporting both prongs needed for an FRO. See Silver, 387 N.J. Super. at 125-27.

A-0882-19

Defendant first argues that plaintiff failed to establish the predicate act of harassment. He relies on Burkert, where the Supreme Court interpreted N.J.S.A. 2C:33-4(c) to require communications that "reasonably put [the recipient] in fear for his [or her] safety or security or . . . intolerably interfere with that person's reasonable expectation of privacy." 231 N.J. at 263. The holding in Burkert does not apply in this case. First, as noted, Burkert was interpreting subsection (c), while the court here found subsection (a) of the harassment statute applicable. Moreover, defendant's series of text messages, which were replete with profane language and personal insults, were sent to cause plaintiff "annoyance or alarm," especially considering defendant's past conduct towards plaintiff.

Next, defendant argues that the trial court improperly relied on "facts and documents" not entered in evidence. He contends that the text messages were not properly admitted into evidence. He also argues that the court's findings were not specifically based on all the text messages that were read into the record.

The transcripts of the trial establish that the court reviewed the text messages and read most of them into the record. The court also requested copies of the text messages before it made its decision. Neither party objected to the

9

text messages being provided to the court. Defense counsel did claim that some of the text messages were missing, but the court rejected that concern by pointing out that he had not raised the objection during the trial when the messages were being read into the record.

We discern no reversible evidentiary ruling. Furthermore, we reject defendant's arguments that the text messages were not properly in evidence. See N.J.R.E. 901 (explaining the requirement of authentication); see also State v. Mays, 321 N.J. Super. 619, 628 (App. Div. 1999) (explaining that "[o]nce a prima facie showing [of authentication] is made, the writing or statement is admissible").

Defendant also argues that plaintiff pursued an FRO because she wanted to gain an advantage in the parties' custody dispute. The trial court expressly found that defendant's communications were not domestic contretemps. The trial court was also aware of the ongoing custody dispute. Consequently, the trial court implicitly rejected this argument, and we discern nothing in the record that would support a reversal based on this argument.

In his fourth argument, defendant contends that the trial court abused its discretion in finding plaintiff's testimony credible. He asserts that she admitted to planting a false mental-health history concerning defendant and that she

10

repeatedly contradicted herself. Both those contentions are based on a mischaracterization of the actual testimony and evidence, and we reject them.

Finally, defendant asserts that he is entitled to a new trial because plaintiff's trial attorney was administratively ineligible to practice law during the trial. In making that argument, however, defendant fails to submit evidence showing when plaintiff's counsel was on the ineligibility list. Plaintiff's counsel candidly acknowledges that at some point she was on the ineligibility list but has since then corrected that problem. Given this unclear record, we do not find a basis for vacating the trial. The trial principally depended on the credibility of plaintiff and the text messages that the trial court reviewed. While we obviously do not condone lawyers appearing in court when they are on an ineligibility list, here we discern no prejudice to defendant. See State v. Green, 274 N.J. Super. 15, 28 (App. Div. 1994) (finding that a criminal conviction "should not be annulled merely because the defendant was represented by an attorney whose license was suspended for financial reasons"); see also Abdallah v. Pileggi, 914 F. Supp. 1115, 1117 (D.N.J. 1996) (reasoning that "[f]ailure to make payment to the [New Jersey Lawyers'] Fund [for Client Protection] implicates neither character nor competence").

A-0882-19

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0882-19